UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PHOENIX RESTORATION GROUP, INC. and AVSMOOT, LLC, | |
| Plaintiffs, | Civil Action No. 18-2121 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| LIBERTY MUTUAL GROUP INC. d/b/a LIBERTY MUTUAL INSURANCE and OHIO SECURITY INSURANCE COMPANY, | |
| Defendants. | |

**MEMORANDUM OPINION**

The plaintiffs initiated this lawsuit to recover amounts they claim the defendants are obligated to pay under two insurance policies, after "a fire ravaged Plaintiffs' business location at 3150 Blandensburg Road, NE, in Washington, DC, on July 13, 2016." Compl. ¶ 1, ECF No. 1-1. At the trial scheduled to begin on March 9, 2020, the defendants plan to call a witness, David R. Elmore, Jr., who is identified as a certified public accountant, a certified valuation analyst, and a master analyst in financial forensics, to testify both as a fact witness and the defendants' sole expert. *See* Defs.' Mem. Opp'n Pls.' MIL ("Defs.' Opp'n") at 2 & n.1, ECF No. 32. This proposed defense expert witness is well known to the plaintiffs. Indeed, the actions of Elmore and Elmore's firm, MDD Forensic Accountants ("MDD"), figure prominently in the factual allegations underlying the plaintiffs' claims. *See, e.g.,* Compl. ¶¶ 11, 13, 14, 18, 20.

According to the Complaint, Elmore was hired by the defendants' claims adjustor "to assist in evaluating Plaintiffs' claims," *id.* ¶ 11, and then allegedly made critical misrepresentations about how the plaintiffs' claims would be treated, upon which misrepresentations the plaintiffs relied to their detriment, *id.* ¶¶ 11–19. The plaintiffs' harm has

1

allegedly been compounded by the defendants' alleged "fail[ure] to make other required payments due to Plaintiffs." *Id*. ¶ 20. The parties agree that, given Elmore's integral involvement in the events giving rise to this lawsuit, he "will likely be the Defendants' *single most important* fact witness" in the entire case. Pls.' Mot. in Limine to Exclude or Limit the Expert Opinion Testimony of David Elmore ("Pls.' MIL") at 2, ECF No. 31 (emphasis in original); *see* Defs.' Opp'n at 6–7 (acknowledging that "Mr. Elmore, likely, has the best understanding of the facts of any individual involved in this case given his heavy involvement over the years").

Given the undisputed significance of Elmore's fact testimony, the plaintiffs object to this witness also being called and permitted to testify as the defendants' expert. To this end, the plaintiffs have filed a motion *in limine* to exclude or limit Elmore's testimony, Pls.' MIL, which motion became ripe for resolution with the completion of briefing on February 7, 2020. For the reasons explained below, the plaintiffs' motion is granted.

I.   **BACKGROUND**

The factual and procedural history of this litigation is set out in this Court's recently issued Memorandum Opinion, ECF No. 36, denying the defendants' motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), and thus only those facts pertinent to resolving the pending motion are provided here. The plaintiffs, Phoenix Restoration Group, Inc. ("Phoenix") and AVSmoot, LLC, two restoration subcontractors, each purchased commercial insurance through defendant Liberty Mutual Group Inc. ("Liberty"), in 2016, with the policies underwritten by defendant Ohio Security Insurance Company. Compl. ¶ 8.

Following the fire in July 2016, the defendants assigned the plaintiffs' claims under their insurance policies to a claims adjustor, Paul Barnett, who "promptly arranged for Liberty Mutual to hire" Elmore and MDD. *Id*. ¶ 11; Defs.' Opp'n at 1, 2 (stating that Elmore was hired "within

eight days of the fire"). The parties then allegedly had a "series of meetings," including on August 31, 2016, "to discuss Plaintiffs' then-known or already anticipated claims, and also to review the insurance coverages that may be available." Compl. ¶¶ 12–13. Elmore was involved in these meetings and allegedly provided guidance to the plaintiffs as to how certain losses would be categorized. *Id*. ¶¶ 13–16; Defs.' Opp'n at 1 (confirming that Elmore's task "to measure the damages under applicable coverages, necessitat[ed] his complete involvement in the adjustment process, including participating in meetings and communications with the Plaintiffs"). The defendants confirm that Elmore "met with representatives of the Plaintiffs to discuss the Plaintiffs' claim no less than nine times" between July 25, 2016 and December 18, 2017. *Id.* at 4. Elmore's firm also allegedly provided schedules showing how the plaintiffs' claimed losses would be categorized, consistent with prior representations, but then subsequently changed those schedules "to reallocate certain losses," Compl. ¶ 19, "thereby subjecting those losses to" caps on reimbursement, *id*. ¶ 18. According to the plaintiffs, in addition to "the improper reallocation of certain of Plaintiffs' losses," *id*. ¶ 20, the defendants "fail[ed] to make other required payments due to Plaintiffs," *id*., including for certain business income losses, "which even MDD recommended for payment," *id*. ¶ 20(a).

Based on these factual allegations of misrepresentations and refusal to pay "substantial insurance proceeds appropriately owed," *id*. ¶ 27, the plaintiffs assert three claims for relief: in Count I, for breach of contract, *id.* ¶¶ 23–28; in Count II, for promissory estoppel based on the plaintiffs' reliance on the explanations and promises made by the defendants' agents, including Elmore, *id.* ¶¶ 29–34; and in Count III, for violation of the District of Columbia's Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.*, premised, again, on the alleged misrepresentations made by the defendants' agents, including Elmore, Compl. ¶¶ 35–39. Elmore's testimony will be highly relevant to each of these claims, relating what he said and did,

3

the opinions he formed while working on the plaintiffs' claims under the insurance policies at issue, and the manner in which the defendants processed the plaintiffs' claims, including his and MDD's sanction of or disagreement with any steps taken by defendants or its other agents in the treatment of those claims. *See generally* Elmore Report, ECF No 11-1.

## II. LEGAL STANDARD

As the Supreme Court has recognized, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Pretrial motions *in limine* effectuate the directive, embodied in Federal Rule of Evidence 103(d), that "[t]o the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." FED. R. EVID. 103(d). Pretrial motions *in limine* also further the general purpose of the Rules of Evidence to administer the proceedings "fairly . . . to the end of ascertaining the truth and securing a just determination." FED. R. EVID. 102. To this end, "[a] pre-trial ruling, if possible, may generally be the better practice, for it permits counsel to make the necessary strategic determinations." *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980).

## III. DISCUSSION

The plaintiffs object, under Federal Rule of Evidence 403, to Elmore providing both factual testimony and independent expert testimony to rebut plaintiffs' proffered experts on general industry standards for processing insurance claims and forensic accounting because of the danger of prejudice and jury confusion. *See* Pls.' Reply Mem. Supp. Pls.' MIL ("Pls.' Reply") at 3, ECF No. 33 (objecting to Elmore "testify[ing] as an independent Rule 702 expert (a) to rebut the independent expert testimony of insurance industry claims handling expert David Stegall; (b) to rebut the independent expert testimony of forensic accountant Marylee Robinson;

4

or (c) otherwise to provide free-standing independent expert testimony divorced from his work on the underlying claim."). At the same time, the plaintiffs do not object to Elmore "testify[ing] as to every . . . opinion he formed while working on the claim," *id.*, should such opinion testimony meet the standards of Rule 702. *See, e.g., Daniels v. Dist. of Columbia*, 15 F. Supp. 3d 62, 69 (D.D.C. 2014) (determining that "a treating physician who testifies as to her diagnosis and treatment of the patient is still giving expert testimony" pursuant to Rule 702).[1] Notably, the plaintiffs do not challenge Elmore's qualifications to testify to the opinions he formed as an accountant while working on the plaintiffs' insurance claims but assert "he wholly lacks the background and experience necessary to qualify as an expert able to provide any counter-opinion" about the claims adjustment process. Pls.' MIL at 7; Pls.' Reply at 3 (arguing that Elmore "has no expertise" regarding "insurance industry standards for claims handling").

Confronted with the plaintiffs' objection, under Rule 403, to Elmore testifying in a hybrid capacity as the defendants' key factual witness as well as the sole defense expert for all purposes, the defendants counter that use of hybrid witnesses is a common practice allowable under Rules 701 and 702. *See* Defs.' Opp'n at 5 (citing *MCI Telecomms. Corp. v. Wanzer*, 897 F.2d 703 (4th Cir. 1990) and *Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399 (3d Cir. 1980)).[2]

---

[1] The plaintiffs also raise logistical problems posed by Elmore's dual role. Pls.' MIL at 3 (highlighting the "problem that will almost surely arise once the rule against sequestration is invoked, and Mr. Elmore then wants to learn what Plaintiffs' experts have testified in Plaintiffs' case-in-chief, before he tries to then take the stand as a 'rebuttal expert' (but also 'fact' witness) during Defendants' case"); *see also* FED. R. EVID. 615 (authorizing exclusion of non-party witnesses "so that they cannot hear other witnesses' testimony"). This problem is addressed by the limitations imposed on Elmore's hybrid testimony.

[2] The defendants correctly note that this Court, when exercising diversity jurisdiction, applies federal, not state, rules of procedure and evidence. Defs.' Opp'n at 3; s*ee Burke v. Air Serv Int'l, Inc.*, 685 F.3d 1102, 1107–08 (D.C. Cir. 2012) (noting that when "there is a Federal Rule . . . , the 'scope' of which is 'sufficiently broad to control the issue before the Court,'" (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–50 (1980)), "the Federal Rule . . . governs, state law notwithstanding, 'unless it exceeds statutory authorization or Congress's rulemaking power'" (quoting *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010))). Plaintiffs' citation to caselaw from the D.C. Court of Appeals is not to the contrary. Pls.' MIL at 2 (noting that D.C.'s "highest court used to bar all 'hybrid' fact/expert witnesses, because of the recognized 'substantial danger that [an opposing party] would be prejudiced because his credibility as a lay witness was bolstered by his testifying as an expert,'" (alteration in original) (quoting *Beach v. United States*, 466 A.2d 862, 865 (D.C. 1983)), but subsequently "rejected an outright ban on hybrid witnesses" in *Eason v. United States*, 704 A.2d 284 (D.C. 1997) (en banc)). This portion of the plaintiffs' brief is read merely to emphasize judicial caution about the admissibility of hybrid testimony and not the applicable legal authority.

Following review of the applicable legal principles, the parties' disagreement about the admissibility of the hybrid testimony proffered by defendants in this case is analyzed to reach the conclusion that the plaintiffs are correct: while Elmore may testify as a fact witness based on his personal knowledge, he may only offer limited expert opinion testimony, as described below.

### A. Legal Principles Applicable to Admissibility of Hybrid Fact/Expert Witness

As a general matter, having a witness testify as both a fact and expert witness is permissible under Federal Rules of Evidence 701 and 702. The Advisory Committee Notes to Rule 701 make this point clearly, stating that this rule "does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*," such that "it is possible for the same witness to provide both lay and expert testimony in a single case" so long as "any part of [the] witness's testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil . . . Rules." FED. R. EVID. 701 advisory committee's notes (2000 Amendments) (emphasis in original).

Consistent with this guidance, "so-called 'hybrid' fact-cum-expert witnesses," *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 224 (D.C. Cir. 2011), have been allowed in this Circuit and elsewhere. *See, e.g.*, *United States v. Smith*, 640 F.3d 358, 365 n.3 (D.C. Cir. 2011) ("[T]here is 'no bar in this Circuit to dual testimony as both a fact and expert witness.'" (quoting *United States v. Ramsey*, 165 F.3d 980, 984 (D.C. Cir. 1999)); *United States v. Catlett*, 97 F.3d 565, 571 (D.C. Cir. 1996) ("[E]very federal court to consider the issue of dual testimony as both a fact and expert witness has concluded that the Federal Rules of Evidence permit such testimony."); *Williams Enters., Inc. v. Sherman R. Smoot Co.*, 938 F.2d 230, 233–34 (D.C. Cir. 1991) (permitting insurance broker to testify both to facts and to his opinion "based . . . on specialized knowledge"); *United States v. Barron,* 940 F.3d 903, 920 (6th Cir. 2019)

("[W]e have 'refuse[d] to adopt a per se prohibition' on allowing an officer to testify both as a fact and an expert witness." (second alteration in original) (quoting *United States v. Thomas*, 74 F.3d 676, 682 (6th Cir. 1996))); *United States v. Foster,* 939 F.2d 445, 450–52 (7th Cir. 1991) (allowing dual testimony but urging care to avoid jury confusion).

Yet, "[a] 'two-hatted' witness providing closely related lay and expert opinion testimony" presents special risks due to the "'aura of special reliability and trustworthiness surrounding expert testimony.'" *United States v. Williams*, 827 F.3d 1134, 1160–61 (D.C. Cir. 2016) (quoting *United States v. Cruz*, 363 F.3d 187, 194 (2d Cir. 2004)). When hybrid testimony is not presented properly, "the manner in which [the] expert and lay opinions [are] interspersed during the trial" can "require[] mental gymnastics of the jurors in determining when [the witness] was testifying as an expert and when he was not, risking confusion." *Id.* at 1160. Additionally, "the fact that an instruction [is] given on [a witness's] expert testimony" sometimes leads "the jury reasonably to assume that all of [the witness's] opinion testimony was based upon his expertise and not merely on his own perceptions of events presented to the jury." *Id.*

These concerns about juror confusion may require, under Rule 403, the exclusion altogether of, or imposition of strict scope limits on, the expert portion of a hybrid witness's testimony or the use of other procedural safeguards against jury confusion. *See, e.g., United States v. Garcia,* 752 F.3d 382, 392 (4th Cir. 2014) (citing risks of jury confusion and prejudice from hybrid witness testimony and directing use of proper safeguards, such as "requiring the witness to testify at different times, in each capacity; giving a cautionary instruction to the jury regarding the basis of the testimony; allowing for cross-examination by defense counsel; establishing a proper foundation for the expertise; or having counsel ground the question in

either fact or expertise while asking the question"); *United States v. York*, 572 F.3d 415, 425 (7th Cir. 2009) (recognizing precautions akin to those in *Garcia*).[3]

In addition to Rule 403 concerns, expert testimony from a hybrid witness may be excluded based upon a finding of insufficiency under Rule 702, which requires that "the [expert] testimony is the product of reliable principles and methods" and "the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702(c), (d). The reliability of expert testimony may be critically undermined if the expert witness has a clear interest in the outcome of the proceeding. Thus, courts often, for instance, prevent parties themselves from testifying in a hybrid capacity. *See, e.g.*, *Ordon v. Karpie*, 273 F. App'x 27, 30 (2d Cir. 2008) (affirming decision excluding plaintiff physician from testifying as his own medical expert, pursuant to Rules 702 and 403, because he was "'too intertwined with the facts of [the] case . . .' to 'assist the trier of fact to understand the evidence or to determine a fact in issue'" and his testimony "'would be more prejudicial than probative because of the difficulty of separating [the plaintiff's] lay testimony about why he approached the surgery as he did from his expert testimony about what a competent professional would have done in the same circumstances'" (quoting *Ordon v. Karpie*, 543 F. Supp. 2d 124, 128 (D. Conn. 2006))); *Proteus Books Ltd. v. Cherry Lane Music Co.*, 873 F.2d 502, 515 (2d Cir. 1989) (upholding decision not to allow party to testify as an expert); *United States* ex rel. *Westrick v. Second Chance Body Armor, Inc.*, 293 F. Supp. 3d 77, 81 (D.D.C. 2018) (determining that *pro se* parties could not serve as expert witnesses). Likewise, courts prevent expert witnesses from testifying if they "become an

---

[3] As another procedural safeguard against jurors overly relying on expert testimony, this Court's practice is not to refer to any witness qualified to provide opinion testimony, under Rules 702 and 703, as an "expert" but merely as a person who may offer opinion testimony based on his or her specialized knowledge. *See* FED. R. EVID. 702, advisory committee's notes (2000 Amendments) (advising that "use of the term 'expert' in the Rule does not, however, mean that a jury should actually be informed that a qualified witness is testifying as an 'expert'" and that "[i]ndeed, there is much to be said for a practice that prohibits the use of the term 'expert' by both the parties and the court at trial" to "ensure[] that trial courts do not inadvertently put their stamp of authority on a witness's opinion, and [to] protect[] against the jury's being overwhelmed by the so-called 'experts'" (internal quotation marks omitted)).

advocate for a cause," such as when a witness affirmatively seeks employment as an expert witness on one side of a case. *Viterbo v. Dow Chemical Co.*, 646 F. Supp. 1420, 1425 (E.D. Tex. 1986); *see also, e.g.*, *In re Air Crash at Detroit Metro. Airport*, 737 F. Supp. 427, 430 (E.D. Mich. 1989) (determining that president of a national "right to life" organization could not provide objective expert testimony as to when a fetus becomes viable), *aff'd without opinion*, 917 F.2d 24 (6th Cir. 1990).

In sum, exclusion of or scope restrictions on the expert opinion portion of hybrid testimony, combined with other procedural safeguards, may be based on either, or both, of two grounds: (1) that the expert testimony is insufficiently reliable to satisfy Rule 702; and (2) that the "probative value" of the evidence "is substantially outweighed by [the] danger of . . . unfair prejudice, confusing the issues, [and/or] misleading the jury." FED. R. EVID. 403.

### B. Expert Testimony of Defendants' Proffered Hybrid Witness Must Be Limited

The concerns prompting imposition of strict limitations on the scope of any expert portion of proffered hybrid testimony are all present here. Elmore is a key fact witness and thus avoiding any jury confusion about the basis of his fact testimony is critical. From the beginning, Elmore had "complete involvement" in the claims adjustment process giving rise to the plaintiffs' pending legal claims, "including participating in meetings and communications with the Plaintiffs." Defs.' Opp'n at 1. At the meeting on August 31, 2016, Elmore is the person who allegedly explained and described on a whiteboard the categorization or treatment under the insurance policies of the plaintiffs' damages, which led the plaintiffs to take certain mitigation steps rather than others. Compl. ¶¶ 13–15. What Elmore said and did at the August 31, 2016 meeting and thereafter in evaluating, processing, and communicating about the plaintiffs' claims will be key questions in this suit, and the ultimate outcome in this case may turn on the jury's assessment of Elmore's credibility. Allowing Elmore to opine, as an expert, about the

9

consistency of his conduct with industry standards on claims processing and accounting, as the defendants appear to intend, would improperly bolster his factual testimony by imbuing it with undue weight, under Rule 403.

Moreover, because Elmore is purported to have *engaged* in the alleged misrepresentations communicated to the plaintiffs, he has a clear incentive to determine, in his expert capacity, that the defendants' conduct (which, at bottom, rests in significant part on *his* conduct) was appropriate and proper, for a number of reasons. For instance, Elmore, who works as an accountant at MDD and was hired by defendant Liberty to assist with the plaintiffs' claims, Compl. ¶ 11, may view the opportunity for future referrals of work from the defendants as dependent on the outcome of this proceeding. Further, given the thrust of the plaintiffs' factual allegations and claims, Elmore may harbor concern that the outcome of this proceeding will affect his professional reputation or feel that that the plaintiffs' allegations attack him personally, prompting him to defend his actions to a degree that, while understandable, is inconsistent with the objectivity and reliability required of an expert witness. *Cf. Napoli v. First Unum Life Ins. Co.*, No. 99 Civ. 1329(GEL), 2005 WL 975873, at *4 (S.D.N.Y. Apr. 22, 2005) (Lynch, J.) ("[A]s a treating physician, [the witness] ha[d] every incentive—psychological, moral and even, in view of the risk of malpractice liability, financial—to take the most conservative possible view of [the plaintiff's] prognosis and treatment."). In fact, Elmore himself faces potential liability if the plaintiffs prevail, as under District of Columbia law, an insurer who is at fault due to the misrepresentations of an agent may seek recovery of its damages from that agent. *See Max Holtzman, Inc. v. K & T Co.*, 375 A.2d 510, 514–15 (D.C. 1977). These considerations are all fodder for cross-examination of Elmore, as to either factual or opinion matters about which he

10

may testify, but also militate strongly in favor of granting the limitations requested by the plaintiffs on the scope of Elmore's expert testimony.[4]

Limiting the scope of the opinion testimony to be offered by a hybrid witness to those opinions that guided the witness's actual conduct is common. For example, in *St. Paul Mercury Insurance Co. v. Capitol Sprinkler Inspection, Inc.*, 246 F.R.D. 56 (D.D.C. 2007), the Court permitted the testimony of "a hybrid fact/expert witness," who was employed by a party and had a "role in adjustment of the loss" "with respect to the incident in question." *Id.* at 59. This witness was allowed to testify about information gained during his performance of his actual role that was the subject of his factual testimony but not "to offer his independent opinions regarding causation, or damages assessments made either after litigation commenced or independent of his assessment of damages as a function of his job as an insurance adjuster." *Id.*; *see also Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 371 (7th Cir. 2017) (holding that "hybrid fact/expert witnesses" "must testify from the personal knowledge they gained on the job" and "may [be] preclude[d] . . . from testifying beyond the scope of facts they learned and opinions they formed during the course of their project duties"); *Am. Prop. Constr. Co. v. Sprenger Lang Found.*, 274 F.R.D. 1, 4 (D.D.C. 2011) (allowing, in contract dispute, hybrid witnesses, who actually performed work on property or inspected it, to testify "as to the information they obtained, and the opinions they formed, while performing the tasks they were hired to do in their capacity as contractors," but not permitting hybrid witnesses to "draw their opinions 'from facts supplied by others, in preparation for trial'" (quoting *Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 7 (1st Cir. 2011)); *Goodbys Creek, LLC v. Arch Ins. Co.*, No. 3:07-cv-947-J-34HTS, 2009 WL 1139575, at *14 (M.D. Fla. Apr. 27, 2009) (allowing hybrid witness to testify "but he will be limited to opinions formed and 'information

---

[4] The plaintiffs have requested that the jury be given a cautionary instruction concerning Elmore's hybrid status, Pls.' MIL at 3, and may submit any requested instruction for the Court's consideration.

gained in his role as' replacement contractor" (quoting *St. Paul Mercury Ins. Co.*, 246 F.R.D. at 59)).

Accordingly, even if the defendants sufficiently establish a foundation, under Federal Rule of Evidence 702, for Elmore's expert testimony regarding claims processing and accounting, given his critical role as a defense fact witness, his testimony beyond the facts about which he has personal knowledge, will be limited to his opinions that guided his work on the plaintiffs' claims. Elmore will not be permitted to provide free-standing independent expert testimony divorced from his work on the plaintiffs' claims or to rebut the plaintiffs' experts regarding insurance industry claims handling or forensic accounting, except to the extent that Elmore's rebuttal is factual and stems from his experience working on the plaintiffs' claims.[5]

## IV. CONCLUSION

For the foregoing reasons, the plaintiffs' motion *in limine*, ECF No. 31, is granted. Mr. Elmore may testify to purely factual matters, such as what he said and did at the August 31, 2016 and other meetings and in connection with the plaintiffs' insurance claims, including his review of any documentation the plaintiffs submitted to the insurers in support of their claims. He may also testify as to opinions, based on scientific, technical, or other specialized knowledge, that guided his work on the plaintiffs' claims. He may not otherwise offer expert testimony.

An appropriate Order accompanies this Memorandum Opinion.

Date: February 10, 2020

                                                      BERYL A. HOWELL
                                                      Chief Judge

---

[5] The cases relied on by the defendants fully accord with these restrictions on Elmore's opinion testimony. *See* Defs.' Opp'n at 5 (citing *MCI Telecomms.*, 897 F.2d 703 and *Teen-Ed*, 620 F.2d 399). In each case, the opinion testimony the accountant witness was permitted to provide concerned opinions formed in the course of performing the accountant's work, which Elmore will be permitted to provide here. *See MCI Telecomms.*, 897 F.2d at 706 (permitting accountant and bookkeeper to "testify[] on the basis of records kept by her personally under her control"); *Teen-Ed*, 620 F.2d at 404 (holding that accountant could testify to opinions that "would not necessarily have extended beyond the bounds of his personal knowledge," but could not testify to "what is 'made known to him at or before the hearing'" (quoting FED. R. EVID. 703)).